Please all rise. Here to meet you, here to meet you, here to meet you, this Honorable Appellate Court of the Second Judicial District is now formally pursuant to adjournment. May I ask that you be aware of your seat belts, please. Good morning, gentlemen. You can be seated. Your Honor, on behalf of 2-15-1489, PNC Bank, N.A., I present before you Mr. Jared L. C. Wilson, Defendant's Appellant. On behalf of the Defendant's Appellant, I present to you Mr. Eric Fulmer. On behalf of the Appellant, I present to you Mr. James T. Carver. Mr. Fulmer. Thank you and good morning. Good morning, sir. Please, as a court, my name is Eric Fulmer, Counsel for Appellant Jeremy Wilson. This is a mortgage foreclosure case. My client is one of the mortgagors along with his wife, Michelle, under the Mortgage Act issue. This mortgage was insured by the FHA. This is an important distinction because federally insured mortgages must follow regulations set forth under the National Housing Act. These are codified in Part 203, Title 24 of the Federal, excuse me, of the Code of Federal Regulations. As the 3rd District Appellate Court stated in Bankers Life Company v. Denton, these regulations are mandatory and require express compliance. Is that case one in which the mortgagor discharged the mortgage debt in bankruptcy? I do not believe so, Your Honor. Is that relevant? I don't believe so either, Your Honor. Why not? The FHA regulations and the regulations in 203.604B and D here deal with conditions of precedent to bring a mortgage foreclosure action. That holds true regardless of whether the debt was discharged in bankruptcy or not. You got some authority for that? Because I couldn't find any. I agree with you, Your Honor. The authority is relatively lacking in Illinois regarding these mortgages insured by the FHA. Well, I've done some research relative to Raplevin. And in Raplevin, which is a similar situation in the sense that somebody is attempting to obtain the return of property, there is a requirement for a demand to be made before the litigation is filed. And there's case law that says that in the event that a demand is useless or meaningless, then the demand, which is a prerequisite to the filing of a lawsuit, is forgiven or is of no concern. And so the reason why I asked about bankruptcy is if there's a bankruptcy, why is this meaningful? Why is this requirement, why is this forced negotiation or notice of an attempted negotiation have any meaningful purpose? Well, we're dealing with an individual's home. The bankruptcy may discharge a deficiency in terms of an impersonum deficiency down the line. And the fact that my client received the same shouldn't affect his ability to protect his rights through what the FHA, what's codified in the National Housing Act, and this is a federally insured loan. But what rights does he have to a home that he did not reaffirm the debt in bankruptcy? If your honors would like a supplemental brief regarding this issue, I would be happy to provide one. I mean, if you think about logically, it's no longer their home, right? They didn't reaffirm the debt in the bankruptcy. And they could have reaffirmed the debt because they weren't over and above the amount that they were allowed to, what am I trying to say, the equity in the home. They could have reaffirmed that debt had they wanted to, but they did not. So therefore, what right do they have in the property that they discharged the debt? So don't we have to have a right in the property in order to say, hey, you need to come and negotiate with me? I would concede that given that my client did not reaffirm the debt, I believe the bankruptcy and the foreclosure process are on separate tracks here. But I guess the bottom line is, well, what's the remedy here? For my client? Yeah. In essence, he would want that the judgment against him be vacated and that this... But what judgment? I mean, there is no debt here. It's all been discharged. It's a judgment of foreclosure in terms of him losing his home. I mean... But it's not his home. It's not his home anymore. He discharged the debt in bankruptcy. He didn't reaffirm the debt. So is it his home? Is he just trying to buy more time to stay in this home that really he discharged in bankruptcy? I mean, I know it's unfair because you guys didn't really address this in your briefs, but isn't it kind of common sense as a lawyer to realize, you know, if I don't own something, therefore, I don't have a claim to it? So what is it that he is trying to vacate this judgment for? Well, I believe that he still had a possessory interest in the home. I guess I'm having a hard time separating the discharging of the debt with his possessory interest in the home. As I said, I would be more than happy to brief this issue separately. This is a bit of a surprise. It wasn't brought up by my opponent. Relative to what you've just said, which is he has a possessory interest in the home, how does the regulation or regulations that the federal government has imposed, how does that impact merely a possessory right as opposed to what the regulations appear to relate to, which is a remediation, amendment, or amelioration of the mortgage contract? In other words, it's not just a possessory interest where you're fighting between the mortgagee and your clients for possession. These regulations don't relate to possession. They relate to attempting to see to it that there can be a new agreement whereby your client can still own the property, can still be under the contract insofar as the rights, responsibilities, duties, et cetera, emoluments, they're gone. So how do the regulations have any effect on his possessory interest if that's all he has? I don't think the regulations do affect his possessory interest. I think the regulations help solidify. I think the regulations were enacted to keep people in their homes regardless of... to require the bank to give people an opportunity to stay in their homes based upon the contract. Do you still have a contract when the debt has been discharged in bankruptcy? Isn't the contract nullified at that point? I think that the note, the underlying debt is discharged, but the actual mortgage still is in essence relevant. What purpose does it have? I'm sorry. I don't know. I believe I've tried to answer this question. I don't know how to do so on camera. All right. Fair enough. Relative to relief, I think your prayer for relief asks that we reverse or vacate the sale of the property. Does it also ask that your client be placed back in possession of the property? Well, I think by operation, if the sale is vacated, he would have constructive title to the property. Vacating the judgment and dismissing the case with prejudice are two different things. Correct. Are you also asking that the proceedings be dismissed with prejudice? No. I think the proceedings should be dismissed with the- Without prejudice to refiling upon the establishment that they attempted to go through this amelioration process? Correct. Is he entitled or are your clients entitled to possession of the property during the pendency of the lawsuit? He is currently in possession of the property. I don't think anything would forestall a plaintiff to file an eviction case unless we can- So there's been a sale, but your clients are still in possession. There hasn't been a forcible entry and detainer action filed. Correct. He's a good estate. No. It has been-the prayer for stay has been asked for and denied. I'm curious. Around 106 to 110 of the common law record, there's a letter from your client to someone representing PNC, I guess, that relates that they were discharged in bankruptcy and that they did not reaffirm the debt. And then it goes on to talk in terms of you or your client had attempted to transfer roughly $213,000 to PNC, apparently in an attempt to pay off the debt, even though the same letter said there was no debt. So could you explain the machinations, the mental gymnastics that's going on in this letter relative to if there is no debt, why make this offer or this attempt to transfer, which apparently was rejected? Your Honor, I wish I could. Unfortunately, I didn't represent this client at that time. I believe, and this is conjecture on my part, that he did not understand what reaffirming the debt in the bankruptcy proceeding meant. I assume that if he had the money to pay off the debt, he would have reaffirmed the debt in the bankruptcy proceeding. One would think. Yeah, one would hope. But, again, I can't honestly speak to that. I do know that there have been plenty of, for lack of a better term, odd pleadings in the record. But I can't help it. I can only have what's in front of me now. I do know that there was a recent decision out of the 1st District that came out September 30th. Cafe Big V. S. Arturo, 2016, Hill at 1st, 15273. Now, this didn't deal with FHA regulations, but this dealt with the condition precedent in the mortgage. In that case, there was a notice provision in the mortgage that set out that notice was supposed to be sent to the borrower, a specific notice that delineated what the default was, the time to cure, that the case may go forward in judicial proceed. The defendant in that case argued that this notice was sent but did not comply with paragraph 22 of the mortgage. In the circuit court, the circuit court entered summary judgment in favor of the bank and affirmed the sale. That case was reversed and vacated because this condition precedent wasn't met. Likewise, these FHA regulations are condition precedent to bring forward a case. How could the case be reversed if it was based upon summary judgment? Did the appellate court decide that as a matter of law, no reasonable person would agree that there was compliance? In other words, they were entering summary judgment in the opposite direction and then reversing the judgment as opposed to what usually happens, which is the appellate court says there appears to be a material issue of fact because there is something in contention here. We're not going to substitute our judgment for that of the fact finder or the trier of fact. We're going to remand it back for an actual probative hearing. Well, full disclosure, I was the appellant on that case, and the case was reversed and vacated. It was what? It was reversed and vacated. It was not remanded. So the appellate court entered summary judgment in your favor? In not so many words, yes. Okay. Okay, thank you. I'll continue. Now, my client procedurally filed a motion for summary judgment in this case, stating that the plaintiff did not comply with or at least there was a material issue of fact of whether the plaintiff complied with 24 CFR 203.604B and D. Again, these sections by the National Housing Act mandate express compliance. 203.604B would require the plaintiff to have a face-to-face interview with the mortgagors or at least make a reasonable effort to arrange such a meeting within certain time frames. 203.604D explains what this reasonable effort entails. This reasonable effort would consist of a letter sent to the mortgagors certified by the Postal Service as having been dispatched and also one trip to see the mortgagors at the mortgage property. As to my client, it is undisputed that no face-to-face meeting ever took place. Was there an attempt at a face-to-face meeting? Well, that's another bone of contention. There was an affidavit filed by an agent for the company that purportedly sent someone to the property. And they spoke with allegedly the wife? Correct. That affidavit and the field summary visit sheet that's attached to it makes no mention of trying to contact my client. They were all in the same residence? They were a bit estranged, so I can't say at that time that they were at the same residence. I do know that it was probably his usual place of abode at the time. Was this the address of the mortgage? Yes. The first thing the plaintiff would have to show under 203.604DD is the letter. Go ahead. What are you going to do to me? Is that the letter was sent certified by the Postal Service as having been dispatched. The only thing that plaintiff shows is an affidavit that shows a printout of a letter that says on the top, Certified Return Mail or Return Receipt Requested. It would be easy for the plaintiff to show a tracking number or a green card return that the letter was actually dispatched, but they never did. And I believe my position is that this is necessary because the language of the regulation says that it must be certified by the Postal Service as having been dispatched, not the individual sending the letter. Would a registered letter be sufficient? If the plaintiff showed an actual proof. It says dispatched. It doesn't really say that it has to be delivered. It says that it was dispatched. I agree. And if they had received a green card that said undelivered, I think that would have been fine, but they don't show that. They just show someone who didn't send the letter but looked at business records saying that a letter was probably sent because the top of the letter said Return Receipt Requested. Okay, so you need that, number one. Number two, you need an attempt at a face-to-face. Correct. Okay. We've covered that. So you'll have an opportunity in rebuttal. Thank you. Okay. Thank you, Counsel. Mr. Crowley. Good morning, Your Honor. James Crowley, I'm here with PNC Bank. Your Honor, initially I'd like to clarify some statements or questions that were raised by the panel a few minutes ago. Based on discussions that I've had with my client, Mr. Wilson, who was the only party living in the property at the time the judgment of foreclosure was entered in June 2015, has been evicted from the property, and that was done pursuant to the Foreclosure Act. So based on discussions with my client over the last couple of months, they're in control of the property. So in the event that we were to vacate and foreclose, what would happen? Would he then be excited to quietly, not with force of arms, come back on the property? It raises a very interesting question, Your Honor, and that's why I'd like to address that. Per the record, Michelle lived in the property prior to the June 2015 judgment order. In fact, the affidavit that was attached to Jeremy's initial motion for summary judgment stated that as of November 14th, Michelle's signature notarized that date, that she still lived at the property address. At the time of the hearing, Mr. Law, who was representing Jeremy at the hearing on summary judgment, Mr. Law, who represented Jeremy, clarified to the court that he doesn't represent Michelle, Michelle is not a part of the summary judgment motion, and that she's not living in the property. She didn't respond, right? She did not respond. In fact, the history of this case is very convoluted. Initially, Jeremy and Michelle filed their enter pro se. That answer, as Judge Gibson pointed out, was basically what I would call raised in posse comatose suspenses that the courts don't have jurisdiction over anybody in the country. And after Jeremy and Michelle, or after Jeremy retained counsel, that answer was withdrawn by both Michelle and Jeremy. There's an order to that effect. I apologize, I don't remember the exact date of that order. The parties were then, the defendants, both Jeremy and Michelle, were given an opportunity to file amended answers. An amended answer was filed by Jeremy alone. And he asserted some defenses. Some of those defenses were stricken by the court. Some remain, but those defenses were addressed by P&C in its motion for summary judgment. So default was entered against her? Yes. On June 15, 2015, the same day, or June 21st, I'm sorry, the same day the judgment foreclosure order was entered, the bank presented a motion for default against Michelle, and a separate order of default was entered against Michelle. That is important here. Michelle is not a party to this appeal, only Jeremy. So when the judgment order was entered, the judgment order was entered against both of them for closing up whatever interest those parties still had in the property. And Mr. Crowley, they both filed bankruptcy? They both filed bankruptcies, and they were both discharged in the bankruptcies. So they were no longer obligated on the debt to P&C. Now, the debt still existed. I will say that. The debt still existed. And that debt was secured now solely by the real estate that's securing the property. That's right there. Was secured by the real estate. The law is that the debt, if it exists, does not exist as in personam liability. You're right, Your Honor. So if there's a deficiency, that deficiency is discharged from the bankruptcy? There cannot be a personal deficiency. What was entered in the judgment or the order confirming sale was a deficiency in rem only for $67,000. But there is no personal deficiency at all, either against Michelle and or Jeremy. Why didn't you raise this issue with respect to the bankruptcy? The issue that we're raising today. I apologize, Your Honor. I didn't want to interrupt you. The issues, Judge Gifford did touch on the issue of the bankruptcy in his ruling on the summary judgment. He does state in there that the defendants were discharged in bankruptcy and were no longer obligated for the debt. And so, quoting, this is the record, I forget what's the page number, from the transcript. And so the aftermath of this is the homeowner, who was not personally liable, didn't reaffirm the loan bankruptcy and is now seeking equivalent of the letters that were sent, the face-to-face attempt, the trip to the property, the affidavits, which talk about certified mailing, et cetera. So Judge Gibson did address that. PNC did not really address the issue of the bankruptcy in the appeal because that wasn't raised by the defendants. We do, in the statement of facts, point out to the courts that the bankruptcy was filed and that both defendants were discharged. And there was no reaffirmation. And there was no reaffirmation. Now, going to the question you raised, Your Honor, of what happens. Well, if the court were to vacate the judgment, it would only be as to the appellate, Jeremy. So then you've got an issue where PNC would still have an interest in the property because it's foreclosed out whatever interest Michelle had. Jeremy might have a 50 percent interest in the property that could then be later foreclosed out. But you've got a practical question then of PNC, which is currently in possession of the property, would still have to remain in the property. And would just have to pursue the foreclosure by, you know, again, we don't believe the PNC improperly or failed to comply with the regulations. We believe the bank fully complied with the regulations. Well, where was that certified mail return receipt requested slip? I mean, why wasn't that filed along with your affidavit? There's no requirement under the regulations that that be submitted anywhere. But it does require certification by the post office, not by somebody else. It does. Well, it states that a reasonable effort to arrange a face-to-face, I'm sorry. It shall consist of a minimum of one letter sent to the mortgagor certified by postal services having been dispatched. Now, the affidavit of Mr. Arthur states that the letter of February 2nd was sent by certified mail. They did not have, and I'm not going to say otherwise, there was nothing as a form of an affidavit from the postal service saying that that was sent certified. But based on the fact that the defendant, Mr. Wilson, did not assert any counter affidavit to that of Mr. Arthur, that issue was waived. I mean, if an affidavit could say anything. It's uncontroverted. It's uncontroverted to the extent that it wasn't raised or attacked by Mr. Wilson in his reply. Except that being uncontroverted doesn't mean that something that isn't crime infatia proof, because it's uncontroverted, now becomes crime infatia proven. It was uncontroverted, but it wasn't denied. It was denied. A material issue of fact was raised as to whether or not this was a sufficient level of proof. What they denied was the fact that he did not receive the letter. There's nothing in the regulations that require that the letter be received. And that's where their issues are. That Jeremy is saying, I never received the letter. Well, that's something that the bank does not have the proof. And I've been practicing for a long time. I sent out hundreds, if not thousands of certified letters over my career. The fact is, people do not accept certified letters in most cases from banks or law firms. The reason being, they bring bad news. Yeah, but there's two types of certified letters. There's certified delivered and certified return receipt requested. And neither, or put another way, both of them are acceptable because both qualify for showing that it was dispatched by the post office. And all you need is a certified mail of delivery. And even if it comes back as opposing counsel suggested, undeliverable, it also establishes that it was dispatched. The problem here simply is, you've got a letterhead that has some typing on it that says, we sent it out. Well, we sent it out certified mail. That and a $2.50 might buy you a cup of coffee at Starbucks. Small one. $2.60 is a small one. Your Honor, while that's true, the affidavit of Mr. Arthur laid out exactly what the policies and procedures of PNCR with respect to sending out certified mails. And he laid out the background of what happens with the bank. And Judge Gibson considered that affidavit. In fact, refers to that affidavit in his ruling and finds that the actions of the bank in sending out the letter complied with the regulation. And found that there were no, because there wasn't a counter affidavit from Mr. Wilson on this issue, that there were no material issues of fact as to that question. How could Mr. Wilson file an affidavit that would say the bank didn't do that, the post office didn't do that? How would that be within his realm of knowledge? Because that's really what an affidavit is, is what I know, not what I think or what somebody else has told me. He could have filed a response under stating that the affidavit of Mr. Arthur didn't comply with Supreme Court Rule 191. And that the information that he is testifying... But that's an objection to him and it's not really a counter affidavit. That's true. That is true. And I don't mean to be splitting hairs with you, but, you know, an affidavit that just says here's what the bank always does, here's what we did, that's enough. I don't know how you get around that the post office has to certify this, not that you certify it. I mean, unless there's something else, I don't want to belabor the point, we can just move on. Is there anything else? No, we don't have anything else. We do not have anything else. Okay. What about the good faith attempt? The good faith attempt, there is, in our opinion, no evidence that that meeting with Michelle did not take place. The affidavit, and I don't think Mr. Wilson, while he says that the meeting didn't take place, I think if you read his pleadings, his brief and the pleadings that were filed in the lower court, he basically acknowledges that a meeting that Michelle met with a representative of JMA on February 12th. But also wasn't it argued that the agent that had the, for want of a better term, confrontation, did nothing more than hand a slip of paper that told her to make phone contact with somebody at the bank? No, I think, Your Honor, the meeting requires, or the regulation requires, a reasonable effort to arrange a face-to-face meeting, which includes at least one trip to see the mortgagor at the mortgage property. And that's what happened here. Sorry, doesn't there have to be a meeting with both? No, there's nothing in here that says the meeting has to be with both parties. Frankly speaking. Who's the mortgagor here? Aren't they both the mortgagor? They are the mortgagor, but practically speaking, if they meet at the property, and that's what PNC said, we will have a representative from JMA meeting at your property to have a meeting. Michelle was there. The JMA representative met with Michelle. The JMA representative said, based on his affidavit, you can call PNC now and gave her a letter saying, you can follow up with PNC and arrange a meeting. So PNC, because Jeremy wasn't there, provided information to them to arrange for this meeting. This was an attempt at arranging a meeting that was going to take place based upon negotiations or the telephonic communications between Michelle and the bank relative to setting up a meeting either at the bank or at the home or the local coffee shop where the two mortgagors could be present and also a mortgage banker. Absolutely, because that's really what happened here. Jeremy wasn't there. We're not disputing the fact that Jeremy was not present on February 12th. He wasn't there. So the representative from JMA offered to allow Michelle to use his cell phone to contact a PNC representative and then gave her an envelope that said, you can follow up with PNC. And in fact, as we've stated in our pleadings, follow-up calls from PNC were made to the Wilsons in an effort to talk to them. And that happened in March, April, and May, follow-up calls were made. And that's in the affidavit of Mr. Arthur, that the records show that those calls were made and no responses from the Wilsons were ever had. So that's being said, the bank did make a reasonable effort to arrange a meeting. As the regulations state, a face-to-face meeting is not required if the mortgagor clearly indicates that he will not cooperate in the interview. And that's what we have here, an effort to meet with the Wilsons and their refusal to cooperate and have this meeting. And that meeting was timely. The meeting at the property to arrange for a reasonable meeting was done within three months of the initial default, the default being December 1st, 2015. Their payments, or the December, I'm sorry, not December 1st, the December 2011 payment, their payments weren't due under the terms of the note until the 15th day of the month. The meeting was the 12th. That was within the three-month period. And that was raised by the defendants in their brief, or Jeremy in his brief, but the fact is the timing was within the parameters set forth in the regulations. Thank you. I have a further question. Anything further? No. Thank you, sir. Your Honor, then, you've seen the brief. We're going to stand on our briefs for the remainder. Thank you very much. Thank you. Please reaffirm. Thank you again. What's your answer to my last question? Has your client ever offered to reaffirm the debt to your knowledge? Well, considering I was wrong about him being evicted from the property, to my knowledge, no. And all I know is about the record you point out to where he made the $215,000 offer. And also, I would just like to apologize for stating that I thought he was still on the property. That's what I was told. Just don't go there to get new payments. What I don't quite understand is if he made this offer, where does a person who's been discharged in bankruptcy get $213,000 to make an offer when he's been discharged in bankruptcy a year or two before? It just – I won't say that it's illegal, but it surely seems unusual. I can't comment to that because it would be pure conjecture on my part. It could be a family member. That would be one to help him out. I don't know. I think your Honor has raised proper questions to Mr. Crowley's argument that I don't really need to address much. But in terms of issues with making the judgment only as to Jeremy and not Michelle, it's a fine line for me because I don't represent Michelle. But as in the Acetero case that I cited to you earlier, the court stated that such drastic remedies are sometimes the result of the plaintiff not following what they were supposed to do. That's the argument here, that the plaintiff did not follow condition precedent to filing the foreclosure case. If they didn't follow the condition precedent to filing it against Jeremy, they also naturally didn't follow it to file the case against Michelle. Is this condition precedent waivable or forfeitable? I'm – Because if it isn't waivable and it's not forfeitable, then it's got to be jurisdictional, correct? I agree. How does federal regulations impinge on the jurisdiction of a sovereign state's court of a regional jurisdiction? Well, I believe that the mortgage also, in paragraph 9 of the mortgage, implicitly speaks to these federal regulations and makes it as part of the mortgage. Well, let's assume for the moment that the federal government decides that it doesn't like what happened here. What's its recourse? Probably it's not going to pay off on the guarantee. Does it have the right to come in here and demand mandamus and say, you didn't follow this regulation so therefore you're going to have to vacate your judgment? I understand it's a tenuable position, but – I think it's called full face of precedent. You have other points you want to make. Go ahead. Okay. And also in terms of the agent who did or allegedly visited the property, I believe the brief was pretty clear on the authority argument of that agent. And no Illinois court has opined as to this issue, but there has been a court in Massachusetts, an appellate court in Massachusetts, and I have a copy of that opinion here, wherein an agent for the plaintiff bank had a meeting at a football stadium, basically, with many mortgagors. With many mortgagors? Yes. There wasn't a game? It was just a meeting? I think it was in the office. It was a halftime meeting. It was about a 15-minute conversation per mortgagor, so I think it was a little bit more than that. But that court opined that it was an issue of fact as to whether that agent could enter into a repayment plan with the mortgagor. And the handbook for the HUD regulation said that the person making the meeting needs to have the authority to enter into a repayment plan. This agent who showed up at the property did not seem to have any authority. Rather, he offered a cell phone to have Michelle call the bank. Or he also handed a letter that, if you looked at the substance of the letter, says one sentence, and it says, please call us immediately. I don't know how this could comply with the essence of the regulations. Also, and I believe the brief spoke to this, counsel stated that this meeting in the letter was sent prior to three months after the default. Since there was a repayment plan in this case, I believe the second half of Section B holds, and it says that the mortgagee must have a face-to-face meeting with the mortgagor or make the reasonable attempt within 30 days after a default or 30 days before the foreclosure is commenced. And that happens if a repayment plan is arranged other than during a personal interview. My position is that a repayment plan was arranged below modification. Other than that, I will rest on the briefs. Thank you so much. Thank you. Mr. Powell and Mr. Cuomo, thank you so much for your time here today and the intelligent arguments. We will take the case under consideration and render a decision in due course. We are adjourned for the day. Thank you, gentlemen. Thank you, Judge.